# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

GIAUNIE HENDRIX, individually and on behalf of all others similarly situated,

Plaintiff,

v.

COZY EARTH HOLDINGS, INC.,

Defendant.

Case No. 2:25-cv-2019-RAJ

**DEFENDANT COZY EARTH HOLDINGS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

NOTE ON MOTION CALENDAR:
February 27, 2026

**ORAL ARGUMENT REQUESTED**

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT-RAJ
Case No. 2:25-cv-2019

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

# TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................................................................1

II.    BACKGROUND ......................................................................................................................2

      a.     What Is in the Complaint .............................................................................................2

      b.     What Is Not in the Complaint .......................................................................................2

III.   LEGAL STANDARD .............................................................................................................3

IV.   ARGUMENT ...........................................................................................................................3

      a.     Plaintiff's CEMA Cause of Action is Preempted by Federal Law ......................................3

      b.     Plaintiff Does Not Adequately Allege a CEMA Violation.................................................11

      c.     Plaintiff's CEMA Claim Fails Because the Dormant Commerce Clause Renders CEMA Unconstitutional..................................................................................................11

      d.     Plaintiff's CPA Claim Fails Because It Depends On His Failed CEMA Claim................13

V.     CONCLUSION ........................................................................................................................13

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 1
Case No. 2:25-cv-2019

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250   FAX (628) 221-5828

**Page(s)**

**Cases**

*Altria Group, Inc. v. Good*,
   555 U.S. 70 (2008)............................................................................................................4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................................3

*Benanav v. Healthy Paws Pet Ins*.,
   LLC, No. C20-421-RSM, 2021 WL 4319447 (W.D. Wash. Sept. 23, 2021)..........................10

*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001) ...........................................................................................3

*Brummett v. Washington's Lottery*,
   171 Wash. App. 664, 288 P.3d 48 (2012).............................................................................9

*Certification from United States Dist. Ct. for W. Dist. of Washington in Brown v. Old Navy, LLC*,
   567 P.3d 38 (2025)............................................................................................................7

*Dahlstrom v. Life Care Centers of Am., Inc.*,
   No. 2:21-CV-01465-JHC, 2023 WL 4893491 (W.D. Wash. Aug. 1, 2023) .............................3

*Davis v. Wilmington Fin., Inc.*,
   No. CIV. PJM 09-1505, 2010 WL 1375363 (D. Md. Mar. 26, 2010) .....................................8

*Elcon Const., Inc. v. E. Wash. Univ.*,
   273 P.3d 965 (2012).......................................................................................................5, 8

*Matter of Est. of Rule*,
   No. 83097-0-I, 2022 WL 3152591 (Wash.App. Div. 1, 2022)...............................................11

*Gordon v. Virtumundo, Inc.*,
   575 F.3d 1040 (9th Cir. 2009) ................................................................................... *passim*

*Healy v. Beer Inst.*,
   491 U.S. 324 (1989).........................................................................................................12

*Isomedia, Inc. v. Spectrum Direct, Inc.*,
   No. C08-1733JLR, 2009 WL 10676391 (W.D. Wash. May 27, 2009)...............................6, 10

*Joseph v. Amazon.com, Inc.*,
   46 F. Supp. 3d 1095 (W.D. Wash. 2014)..............................................................................11

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 2
Case No. 2:25-cv-2019

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

*Kleffman v. Vonage Holdings Corp.*,
No. CV 07-2406GAFJWJX, 2007 WL 1518650 (C.D. Cal. May 23, 2007)......................6, 10

*Lucky Star Enters. III, LLC v. Wells Fargo Bank, N.A.*,
585 F. Supp. 3d 1297 (W.D. Wash. 2022)...........................................................13

*Martin v. CCH, Inc.*,
784 F. Supp. 2d 1000 (N.D. Ill. 2011) ...............................................................6, 8, 9

*Martin v. Miller*,
24 Wash. App. 306, 600 P.2d 698 (1979)..............................................................7, 8

*Mostowfi v. i2 Telecom Int'l, Inc.*,
269 F. App'x 621 (9th Cir. 2008) .........................................................................3

*Nat'l Collegiate Athletic Ass'n v. Miller*,
10 F.3d 633 (9th Cir. 1993) .................................................................................13

*Nat'l Pork Producers Council v. Ross*,
6 F.4th 1021 (9th Cir. 2021), *aff'd*, 598 U.S. 356 (2023) .....................................11

*Omega v. Mummagraphics, Inc.*,
469 F.3d at 352–56 ..............................................................................................5

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
469 F.3d 348 (4th Cir. 2006) ........................................................................ *passim*

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970)..............................................................................................12

*Roil Energy, LLC. v. Edington*,
2016 WL 4132471 (Wash.App. Div. 3, 2016).....................................................10

*Rosolowski v. Guthy-Renker LLC*,
230 Cal. App. 4th 1403 (2014) ...........................................................................9

*Sam Francis Found. v. Christies, Inc.*,
784 F.3d 1320 (9th Cir. 2015) ......................................................................11, 12

*Shellenberger v. AIG WarrantyGuard, Inc.*,
No. C24-0657JLR, 2025 WL 732874 (W.D. Wash. Feb. 3, 2025) ......................8

*Silverstein v. Liquid Minds LLC*,
B.C. 375173 (Cal. Super. Ct., County of Los Angeles, August 18, 2009) ...........6

*Sneed v. Talphera, Inc.*,
147 F.4th 1123 (9th Cir. 2025) ............................................................................8

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 3
Case No. 2:25-cv-2019

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

*Stiley v. Block*,
925 P.2d 194 (1996)......................................................................................................6

*Ticey v. Fed. Deposit Ins. Corp.*,
No. C22-1110 MJP, 2023 WL 4743913 (W.D. Wash. July 25, 2023), aff'd,
No. 23-35614, 2025 WL 671114 (9th Cir. Mar. 3, 2025)...........................................10

*Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*,
76 F.4th 1164 (9th Cir. 2023) .......................................................................................8

*Universal Health Servs., Inc. v. United States*,
579 U.S. 176 (2016).......................................................................................................8

*Valley Bank of Nev. v. Plus Sys., Inc.*,
914 F.2d 1186 (9th Cir. 1990) ......................................................................................12

*Workman v. Plum Inc.*,
141 F. Supp. 3d 1032 (N.D. Cal. 2015) ........................................................................8

*Wright v. Lyft, Inc.*,
406 P.3d 1149 (2017)................................................................................................6, 10

**Constitutions**

United States Constitution Supremacy Clause ...............................................................3

**Statutes**

15 U.S.C. § 7701(a)(8)..................................................................................................11

15 U.S.C. § 7701(a)(11)..................................................................................................4

15 U.S.C. § 7704(a)(2).............................................................................................4, 6, 11

15 U.S.C. § 7707(b)(1) ..............................................................................................1, 4, 5

CAN-SPAM Act .................................................................................................3, 4, 11, 13

CEMA ....................................................................................................................... *passim*

CPA.............................................................................................................................2, 13

Okla. Stat. Title 15, § 776.1(A) .....................................................................................5

RCW 19.190.020(1)....................................................................................................5, 12

RCW 19.190.020(1)(b) ..................................................................................................2

Wash. Prac., Tort Law ....................................................................................................8

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 4
Case No. 2:25-cv-2019

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

Washington Consumer Protection Act.................................................................................2

Washington's Commercial Electronic Mail Act....................................................................1

**Court Rules**

Local Rule 7(e) ..................................................................................................................14

Rule 9(b) .............................................................................................................................3

Rule 9(b)'s ...........................................................................................................................3

Rule 12(b)(6)........................................................................................................................3

**Other Authorities**

Restatement (Second) of Torts § 525.................................................................................6

S. REP. 108-102, 2............................................................................................................11

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 5
Case No. 2:25-cv-2019

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

## I.  <u>**INTRODUCTION**</u>

In this putative class-action lawsuit, Plaintiff Giaunie Hendrix seeks hundreds of millions of dollars in statutory penalties—$500 per email, per class member—based on the theory that Washington's Commercial Electronic Mail Act ("CEMA") prohibits Cozy Earth from even mentioning any percent off or discount in the subject lines of its marketing emails, regardless of whether he ever noticed the emails in his inbox.  The Court should reject Plaintiff's strained, no-injury theory, which is preempted by federal law and in any event fails to state a claim.

Specifically, Plaintiff contends that Cozy Earth violated CEMA's prohibition on sending emails with "false or misleading" subject lines by promoting limited-time sales and misstating the discount that recipients would purportedly receive, based on the theory that Cozy Earth merchandise is always on sale.  Critically, however, Plaintiff does not claim to have relied on the challenged subject lines, or allege any injury caused by Cozy Earth's alleged statutory violation.  He does not, for example, allege that he ever noticed these subject lines when they arrived, that he opened the emails or viewed the underlying promotions, or that he made any purchase in response.  Nor does he plead any facts showing what, exactly, was supposedly misleading: he does not identify which specific products the challenged subject lines referred to or the pricing history for those products.  Instead, he asserts that the very presence of such subject lines—even if unseen and unread—triggers strict liability in the amount of $500 per message.

This strict-liability theory is precisely the type of claim Congress sought to preempt through the Controlling the Assault of Non-Solicited Pornography and Marketing ("CAN-SPAM") Act, which expressly bars most state statutes regulating commercial email.  15 U.S.C. § 7707(b)(1).  While CAN-SPAM's preemption provision carves out claims of "falsity or deception" sounding in traditional torts, Plaintiff alleges nothing close to a tort.  He does not plead any of the elements that make a claim "tort-like"—such as a materially false statement, reliance, scienter, or any resulting harm—and instead relies on a bare allegation that subject lines were misleading in the abstract.  His claims thus fail either because they are the type of strict-liability email claims that CAN-SPAM preempts, or, in the alternative, because they do not state a viable claim under the traditional tort principles the statute's narrow exception preserves.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 1
Case No. 2:25-cv-2019

Moreover, CEMA is unconstitutional as applied here, because it violates the Dormant Commerce Clause: by purporting to regulate any email sent to a Washington resident regardless of the sender's location or where the email is received, it directly controls commerce occurring wholly outside the state and imposes precisely the type of inconsistent, state-by-state email-content regime that the Constitution forbids.

The Court should dismiss Plaintiff's Complaint with prejudice for all of these reasons.

## II.    BACKGROUND

### a.    What Is in the Complaint

Plaintiff brings two causes of action on behalf of himself and a putative class: (1) under CEMA, and (2) under the Washington Consumer Protection Act (CPA), premised on the theory that any CEMA violation is a per se CPA violation.  (ECF No. 1-1 ("Complaint") at ¶¶ 55–80.)  Specifically, Plaintiff alleges that Defendant violated CEMA's prohibition on sending commercial emails that "[c]ontain[] false or misleading information in the subject line."  RCW 19.190.020(1)(b).  Plaintiff requests "the greater of actual damages and statutory damages of $500 per email" that allegedly violated CEMA.  (Compl. ¶ 79.)

Plaintiff contends that Cozy Earth violates CEMA any time it sends an email that mentions a discount or sale event in the subject line, based on the theory that the website is allegedly always on sale, so any advertised discounts are "fake" and "illusory."  (*Id.* ¶¶ 5–6, 35–38.)

While the Complaint highlights several emails that Plaintiff claims apply "fake time pressure" by suggesting that the sale will end soon, only to be extended or followed by another sale later, this case is not so limited.  (*Id.* ¶¶ 19–31, 34.)  Instead, Plaintiff purports to represent "all Washington residents who received promotional emails from Cozy Earth with subject lines advertising sales or discounts on Cozy Earth Products" during the class period.  (*Id.* at ¶ 47.)  This definition includes individuals who received emails with no temporal element at all—e.g. "Summer Sale, Up to 25% Off" and "Labor Day Sale, Up to 25% Off."  (*Id.* at ¶ 31.)

### b.    What Is Not in the Complaint

Plaintiff does not claim to have opened, read, or relied on any of the allegedly violative emails. He does not claim that he made any purchase from Cozy Earth, acted upon any advertised discount, or

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 2
Case No. 2:25-cv-2019

even noticed the challenged subject lines when he allegedly received them. Instead, his alleged entitlement to statutory penalties rests simply on the fact that these emails turned up in his inbox.

Plaintiff also pleads no facts about the contents of the emails themselves. He identifies three subject lines with temporal language and claims that those advertised sales continuously extended. However, he never alleges that the later promotions offered the same discounts on the same products. Instead, he simply points to unrelated promotions that occurred at some later time.

### III. <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "[T]hreadbare recitals of the elements of a cause of action," "conclusory allegations of law," and "unwarranted inferences are insufficient." *Dahlstrom v. Life Care Centers of Am., Inc.*, No. 2:21-CV-01465-JHC, 2023 WL 4893491, at *3 (W.D. Wash. Aug. 1, 2023) (citations omitted).

Further, claims that are "grounded" or "sound" in fraud are subject to Rule 9(b)'s heightened pleading standard. *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 623 (9th Cir. 2008). Rule 9(b) requires litigants to identify "the who, what, when, where, and how of the misconduct charged," and to explain "what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex Rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotations and citations omitted). This heightened standard serves "to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

### IV. <u>ARGUMENT</u>

#### a. Plaintiff's CEMA Cause of Action is Preempted by Federal Law

##### i. The CAN-SPAM Act expressly preempts state statutes that regulate commercial emails, like CEMA.

Under the Supremacy Clause of the United States Constitution, Article VI Clause 2, "state laws

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 3
Case No. 2:25-cv-2019

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

that conflict with federal law are 'without effect.'" *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008) (citations omitted). Congress has the authority to "explicitly define[] the extent to which its enactments preempt state law." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009). This is exactly what Congress did in 2003 when it passed the CAN-SPAM Act, which creates a national standard for regulating "the use of electronic mail to send commercial messages." 15 U.S.C. § 7707(b)(1). CAN-SPAM broadly preempts divergent state laws that regulate e-mail:

> This chapter **supersedes any statute . . . of a State . . . that expressly regulates the use of electronic mail to send commercial messages**, except to the extent that any such statute . . . prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.

15 U.S.C. § 7707(b)(1) (emphasis added). This plain language "demonstrates Congress's intent that the CAN–SPAM Act broadly preempt state regulation of commercial e-mail," subject only to a "limited, narrow exception." *Virtumundo*, 575 F.3d at 1061 (holding that CAN-SPAM preempted claim under Washington CEMA).

As Congress found, before CAN-SPAM, numerous states had "enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but th[ose] statutes impose[d] different standards and requirements." 15 U.S.C. § 7701(a)(11). Under that structure, it was "extremely difficult" for businesses to know which disparate statutes they were required to comply with, as email addresses do "not specify a geographic location." *Id*. Those state statutes thus failed to "address[] the problems associated with unsolicited commercial electronic mail." *Id*. To resolve this issue, Congress replaced the previous patchwork of state regulations with a uniform national law. *See id.* § 7701(b)(1).

In drafting a national standard, CAN-SPAM struck a "careful balance" between preserving a "useful commercial tool and preventing its abuse." *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006). For example, as to email subject lines, Congress prohibited only those emails that are: (i) "*likely* to mislead a recipient" about (ii) "a *material* fact regarding the contents or subject matter of the message," and (iii) sent with "*actual knowledge*," or "*knowledge fairly implied* on the basis of objective circumstances," of such falsity. 15 U.S.C. § 7704(a)(2) (emphasis added). These requirements broadly reflect the elements of traditional tort theories, such as common-law claims for fraud

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 4
Case No. 2:25-cv-2019

or deceit. *See*, *e.g.*, *Elcon Const., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 970 (2012) (fraud requires a misrepresentation of an existing, material fact, made with knowledge of its falsity and to induce the plaintiff to rely on it, and that plaintiff suffered damages after reasonably relying upon it).

### ii. CAN-SPAM's Narrow Exception is Limited to Traditional Tort Claims

Because the provision of CEMA at issue, RCW 19.190.020(1), regulates the use of electronic mail, Plaintiff's claims are preempted unless CAN-SPAM's narrow savings clause applies. 15 U.S.C. § 7707(b)(1). As discussed below, it does not.

The Ninth Circuit in *Virtumundo* clarified that CAN-SPAM's preemption exception is "narrow," "limited" and reserved for claims involving "traditionally tortious or wrongful conduct." *Virtumundo*, 575 F.3d at 1062. Put otherwise, only claims resembling a "tort action based on misrepresentations"— i.e., common-law fraud or deceit claims—survive preemption. *Id*. This reading is supported by the history of CAN-SPAM, which "established a national standard, but left the individual states free to extend traditional tort theories such as claims arising from fraud or deception to commercial e-mail communication." *Id*. at 1064. Observing that the *Virtumuno* plaintiff "was not in any way misled or deceived," the Court held that his CEMA claim had "no basis in traditional tort theories and therefore fall beyond the ambit of the exception language in the CAN–SPAM Act's express preemption clause." *Id*. at 1063, 1064.

The Fourth Circuit reached the same conclusion concerning Oklahoma's CEMA analogue in *Omega v. Mummagraphics, Inc.*, 469 F.3d at 352–56. Like CEMA, Oklahoma's law prohibits email correspondence that "[c]ontains false . . . or misleading information." Okla. Stat. tit. 15, § 776.1(A). The Fourth Circuit reasoned that because CAN-SPAM's "pre-emption clause links 'falsity' with 'deception'," its language "suggests that Congress was operating in the vein of tort when it drafted the pre-emption clause's exceptions, and intended falsity to refer to other torts involving misrepresentations, rather than to sweep up errors that do not sound in tort." *Omega*, 469 F.3d at 354 (emphasis added). The plaintiff's claims were preempted because plaintiff sought to impose liability for immaterial representations that reached "beyond common law fraud or deceit." *Id*. at 353.

In line with the Ninth and Fourth Circuits, numerous district courts have also dismissed claims

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 5
Case No. 2:25-cv-2019

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250 FAX (628) 221-5828

under various CEMA analogues as preempted where the plaintiff failed to allege a traditional tort theory. *See Kleffman v. Vonage Holdings Corp*., No. CV 07-2406GAFJWJX,, 2007 WL 1518650, at \*3 (C.D. Cal. May 23, 2007) (holding plaintiff's claims under California's consumer-protection statutes were "clearly preempted" because he did "not allege a traditional tort theory at all, or even that he was at any point mislead by any of the . . . emails"); *Martin v. CCH, Inc*., 784 F. Supp. 2d 1000, 1007 (N.D. Ill. 2011) (holding plaintiff's claim "finds no basis in traditional tort theories and thus falls within CANSPAM's express preemption clause (and outside the exception)"); *Silverstein v. Liquid Minds LLC*, B.C. 375173 (Cal. Super. Ct., County of Los Angeles, August 18, 2009) (minute order) (holding that California's anti-SPAM statute is preempted by CAN-SPAM based on "strict statutory interpretation").

### iii. Plaintiff's Claims Must Be Dismissed Because They Are Preempted

Plaintiff's claims are not premised on anything even vaguely resembling traditional tort theories. CAN-SPAM's narrow savings clause cannot save them. *See Virtumundo*, 575 F.3d at 1062.

Traditional misrepresentation tort theories, such as fraud, typically require nine elements:

> (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages.

*Stiley v. Block*, 925 P.2d 194, 204 (1996); *accord* Restatement (Second) of Torts § 525 (claim for "fraudulent misrepresentation" requires fraudulent intent, "justifiable reliance upon the misrepresentation," causation, and "pecuniary loss"). These requirements generally mirror those set forth in CAN-SPAM, discussed above. *See* 15 U.S.C. § 7704(a)(2) (imposing liability where a sender transmits a subject line likely to mislead a reasonable recipient about a material fact and does so with actual or implied knowledge of the subject line's misleading nature).

By contrast, the "required elements of a claim under CEMA" do not "include all the elements of common law fraud." *Isomedia, Inc. v. Spectrum Direct, Inc*., No. C08-1733JLR, 2009 WL 10676391, at \*3–4 (W.D. Wash. May 27, 2009). Specifically, statutory damages under CEMA are available regardless of whether the plaintiff suffered any injury caused by the challenged representation. *Wright v. Lyft, Inc.*, 406 P.3d 1149, 1154 (2017) (holding that CEMA "does not condition the award of damages on proving

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 6
Case No. 2:25-cv-2019

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

either injury or causation"); *Certification from United States Dist. Ct. for W. Dist. of Washington in Brown v. Old Navy, LLC,* 567 P.3d 38, 42 (2025) ("CEMA's $500 penalty does not require a showing of actual damages."). "It would be logically incongruous to conclude that Congress endeavored to erect a uniform standard but simultaneously left states and local lawmakers free to manipulate that standard to create more burdensome regulation." *Virtumundo*, 575 F.3d at 1063. Under such an approach, a single state's strict laws would "become a de facto national standard"—"undermin[ing] to the point of near-irrelevancy" the "national standard" that Congress created, and creating a "loophole so broad that it would virtually swallow the preemption clause itself." *Omega*, 469 F.3d at 356; *accord Virtumundo*, 575 F.3d at 1061.

But regardless of whether CEMA is preempted on its face, Plaintiff's claims here come nowhere close to alleging "traditionally tortious or wrongful conduct," as required to avoid preemption. *Virtumundo*, 575 F.3d at 1062. Plaintiff fails to plead that the email subject lines were materially false or misleading, that he relied on any of the allegedly misleading email subject lines, that he suffered any actual harm, or that Defendant knew the subject lines were false or misleading. Instead, Plaintiff proceeds on a strict liability theory: that because he received emails with subject lines allegedly containing noncompliant wording, he is entitled to recover $500 per email, regardless of whether he ever noticed or acted on the emails. Such claims are preempted under *Virtumundo* and *Omega*.

### 1. Plaintiff Does Not Allege Any Material Misrepresentation

There is no question materiality is required for traditional fraud claims to survive preemption. *Virtumundo,* 575 F. 3d at 1059 (claims based on "immaterial misstatements" are preempted); *id.* at 1061–62 (stressing that "materiality component comport[s] with the policy pursued by the federal legislation as a whole"); *id*. at 1065 (only claims premised on "*material*" misstatements survive preemption) (emphasis in original); *id*. (requiring "something of *material* importance") (emphasis in original).

To establish materiality, Plaintiff was required to show that the subject lines were material to his own purchasing decisions—something he cannot do here, since he does not claim to have even read the challenged subject lines, much less that he changed his behavior in response to them. *See Martin v. Miller*, 24 Wash. App. 306, 600 P.2d 698, 700 (1979) (analyzing whether "representations were material to the plaintiffs' decision to enter into a purchase and marketing agreement with the defendant") (emphasis

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 7
Case No. 2:25-cv-2019

added); *Hendrix ex rel. United States v. J-M Mfg. Co., Inc.,* 76 F.4th 1164, 1169 & n.5 (9th Cir. 2023) (focusing on whether the alleged misstatement was "material to [the plaintiff's] decision-making") (emphasis added); *Elcon*, 273 P.3d at 970–71 (failure to provide the hydrology report for the project was not material where the omitted information did not impact plaintiff's bidding decision).

The challenged subject lines would not be material to anyone else, either. A statement is material only if a reasonable person would "clearly attach importance" to it when deciding "to enter into the transaction," and only if it affects "the very essence of the bargain." *Martin v. Miller*, 24 Wash. App. 306, 600 P.2d 698, 700-701 (1979); *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 193 n.5 (2016) (a misrepresentation must concern the "essence of the bargain"). As applied here, a subject line is not material because it would not drive a customer to make a purchase. *See* 16A Wash. Prac., Tort Law & Practice § 19:3 (5th ed.) (emphasis added) ("A material fact is one that *not only influences and affects the transaction*, but also goes to its *very essence and substance*.").

In evaluating materiality in fraud cases, the context of a challenged statement matters. *Sneed v. Talphera, Inc.,* 147 F.4th 1123, 1131 (9th Cir. 2025) ("[t]o decide whether a misstatement or omission can mislead, we need to look at 'the context surrounding the statement[ ].'"). Reasonable consumers understand that promotional subject lines are high-level (one-"line") summaries meant to summarize the "subject" of the email, and not complete statements of terms or conditions. "Every reasonable shopper knows that the devil is in the details." *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015); *see also Shellenberger v. AIG WarrantyGuard, Inc.*, No. C24-0657JLR, 2025 WL 732874, at *6 (W.D. Wash. Feb. 3, 2025) ("after reading Defendants' offer, a reasonable consumer would realize that it does not contain all applicable terms and conditions, and the consumer would know to follow the link in the disclaimer to view the terms and conditions.") (currently on appeal); *Davis v. Wilmington Fin., Inc.*, No. CIV. PJM 09-1505, 2010 WL 1375363, at *6 (D. Md. Mar. 26, 2010) (dismissing fraud claim because plaintiff did not allege a material misrepresentation, since complete loan terms were provided to him in loan documents).

Thus, in *Martin v. CCH, Inc.*, 784 F. Supp. 2d 1000, 1007 (N.D. Ill. 2011), the court dismissed claims that a tax services provider violated Illinois's CEMA analog by failing to disclose in marketing

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 8
Case No. 2:25-cv-2019

emails that opening such emails would allow the sender to capture the recipient's IP address and related data. *Id.* The plaintiff averred that the subject lines were misleading because, had they warned him that opening the emails would lead to this supposed "information-harvesting," he would have deleted rather than opened those emails. *Id.* at 1002, 1007. The court rejected this argument based on *Virtumundo* and *Omega*, which foreclosed the plaintiff's ability to bring a claim on purportedly "incomplete" information in an email subject line: "[T]wo circuits have held that less than comprehensive information outside the body of an e-mail is at best a technical allegation that finds no basis in traditional tort theories and thus falls within CAN-SPAM's express preemption clause (and outside the exception)." *Id.* at 1007. Further, "even if the omitted information could be deemed not only incomplete but also 'misleading,'" the court found that the plaintiff's claim "still would be preempted" because any omission was immaterial. *Id.* (citing 15 U.S.C. § 7704(a)(2)).

Plaintiff's theory is therefore similar to the non-material subject-line challenge that *Martin* deemed legally insufficient. No reasonable consumer expects a subject line to contain detailed pricing information, such as how often items may have been on sale or whether a promotion might later be extended. Because a subject line would not drive a purchase, Plaintiff cannot plead materiality and his claim is preempted. Even if he opened any of the challenged emails (which he does not allege), a consumer's decision to open an email, in itself, is insufficient to establish materiality. *See Martin*, 784 F. Supp. 2d at 1007*; see also Rosolowski v. Guthy-Renker LLC*, 230 Cal. App. 4th 1403, 1417–18 (2014) (because the body of the email "plainly and conspicuously stated the conditional nature of the offer. . . an e-mail recipient, acting reasonably under the circumstances, would not be misled about a material fact with respect to the nature of the offer of a free gift or free shipping.").

Even if materiality could be determined based solely by considering the challenged representation, in a vacuum (which of course it cannot), statements that create an alleged false sense of urgency are not material. *See Brummett v. Washington's Lottery*, 171 Wash. App. 664, 678, 288 P.3d 48 (2012) (advertisement claiming tickets were "going fast" was not "something of material importance"). At most, such statements may influence *when* the consumer decided to buy—prompting a purchase one day earlier due to an asserted "sense of urgency"—but it does not alter the fundamentals of the transaction. This

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 9
Case No. 2:25-cv-2019

theory therefore fails regardless.

### 2. Plaintiff Does Not Allege Reliance

Plaintiff also does not establish reliance, another touchstone of any fraud claim. *Bisson v. Bank of Am*., N.A., 919 F. Supp. 2d 1130, 1137 (W.D. Wash. 2013); *Benanav v. Healthy Paws Pet Ins*., LLC, No. C20-421-RSM, 2021 WL 4319447, at *10 (W.D. Wash. Sept. 23, 2021) (dismissing fraud claim because "nowhere does [the complaint] allege that plaintiffs actually reviewed and/or relied upon" alleged misstatements); *Ticey v. Fed. Deposit Ins. Corp*., No. C22-1110 MJP, 2023 WL 4743913, at *2 (W.D. Wash. July 25, 2023), aff'd, No. 23-35614, 2025 WL 671114 (9th Cir. Mar. 3, 2025) (dismissing complaint that "failed to provide sufficiently detailed and particularized allegations" establishing how plaintiffs "justifiabl[y] relied on the misstatements" to their detriment). Plaintiff's conclusory allegation to have "received" allegedly non-compliant emails (Compl. ¶ 7) "is not the same as an allegation that anyone acted in reliance upon the information contained in it." *Isomedia*, 2009 WL 10676391, at *4.

For example, in *Kleffman v. Vonage Holdings Corp*., No. CV 07-2406GAFJWJX, 2007 WL 1518650, *3 (C.D. Cal. May 23, 2007), the plaintiff received eleven unsolicited advertisement emails from defendant's website and filed a lawsuit under California's prohibition on deceptive email header information. The Court held that these claims were "clearly preempted" by CAN-SPAM because the complaint "does not allege a traditional tort theory at all, or even that he was at any point mislead by any of the eleven Vonage emails." *Id.* (emphasis added). Similarly, in *Virtumundo*, the Court found compelling the fact that the plaintiff "was not in any way misled or deceived." 575 F.3d at 1063.

### 3. Plaintiff Does Not Allege Actual Injury

Actual damages are also a well-recognized requirement of fraud claims. *Roil Energy, LLC. v. Edington*, 2016 WL 4132471, at *18 (Wash.App. Div. 3, 2016) (holding plaintiff's cause of action for fraud should have been dismissed because he "failed to prove that he suffered any damages"). As discussed above, CEMA does not require damages. *Wright*, 406 P.3d at 1154. Likely as a result, Plaintiff does not claim to have suffered any harm as a result of receiving the challenged emails—which makes sense, because he does not claim to have noticed or opened them.

//

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 10
Case No. 2:25-cv-2019

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

### 4. Plaintiff Does Not Allege Scienter

Plaintiff does not contend that Cozy Earth intended to mislead him or anyone else, as required to establish traditional fraud or deceit. *Matter of Est. of Rule*, No. 83097-0-I, 2022 WL 3152591, at *3 (Wash.App. Div. 1, 2022) (affirming dismissal of plaintiff's fraud claim for failing to allege that defendant knew the representation was false or that defendant intended to mislead the plaintiff); *Omega*, 469 F.3d at 353-54 (fraud or deceit tort requires sender "knew" statements were false). This requirement accords with Congress's specific focus on persons "seek[ing] to defraud consumers," S. REP. 108-102, 2, by "purposefully" sending misleading information. 15 U.S.C. § 7701(a)(8) (emphasis added); 15 U.S.C. § 7704(a)(2) (expressly requiring "knowledge" of falsity to impose liability).

### b. Plaintiff Does Not Adequately Allege a CEMA Violation

To avoid express preemption under CAN-SPAM, Plaintiff may seek to establish that he has, in fact, adequately pled fraud or another traditionally tortious misrepresentation claim. But as discussed above, the Complaint does not allege—much less with particularity—key elements of a traditional misrepresentation-tort claim, including reliance, damages, scienter, or materiality. Thus, to the extent that Plaintiff now seeks to advance a fraud theory to avoid preemption, his claim nonetheless still fails as inadequately pled. *See, e.g., Joseph v. Amazon.com, Inc.,* 46 F. Supp. 3d 1095, 1109 (W.D. Wash. 2014) (dismissing plaintiff's fraud claim for merely alleging that Amazon made a false statement, and failing to allege how the misrepresentation was material, or that he relied upon it to his detriment).

### c. Plaintiff's CEMA Claim Fails Because the Dormant Commerce Clause Renders CEMA Unconstitutional

CEMA is also unconstitutional under the Dormant Commerce Clause. That Clause, implicit in Congress's power "[t]o regulate Commerce. . . among the several States," operates as a limitation on state authority to regulate commerce in a manner that is disruptive to economic activities in the nation as a whole. *See Sam Francis Found. v. Christies, Inc*., 784 F.3d 1320, 1323 (9th Cir. 2015); *see also Nat'l Pork Producers Council v. Ross,* 6 F.4th 1021, 1026 (9th Cir. 2021), *aff'd*, 598 U.S. 356 (2023). Congress enacted the CAN-SPAM Act for this exact reason—to prevent a patchwork of inconsistent state email regulations from disrupting interstate commerce. *Virtumundo*, 575 F.3d at 1063 ("The CAN–SPAM Act

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 11
Case No. 2:25-cv-2019

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

was designed to ensure that 'legitimate businesses would not have to guess at the meaning of various state laws when their advertising campaigns ventured into cyberspace.'").

CEMA violates the Dormant Commerce Clause because it "directly controls commerce occurring wholly outside the boundaries of [Washington.]" *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989). Such a statute is "per se invalid." *Valley Bank of Nev. v. Plus Sys., Inc.*, 914 F.2d 1186, 1189–90 (9th Cir. 1990). CEMA purports to govern any "commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident," regardless of whether the recipient is physically present in Washington at the time the email is received—or even remains a Washington resident at all. RCW 19.190.020(1). Under this scheme, Cozy Earth, which is based in Utah, could face liability for sending a promotional email to an individual who registered an email address while living in Washington but later moved out of state or is temporarily located elsewhere, such as a Washington resident attending college in California.

As the Ninth Circuit explained in *Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320 (9th Cir. 2015) (*en banc*), the fact that a recipient qualifies as a "Washington resident" is not enough to establish the territorial nexus between the regulated conduct and the state. That case involved a California law requiring royalties to be paid to an artist for fine art sales "whenever 'the seller resides in California'". *Id.* at 1323. The Court struck down the law as unconstitutional, because it would regulate an out-of-state art sale even where "the sculpture, the artist, and the buyer never traveled to, or had any connection with, California," simply because the seller was a California resident. *Id.* Just as in *Sam Francis Foundation*, because "the state statute facially regulates a commercial transaction that 'takes place wholly outside of the State's borders,'" the Dormant Commerce Clause applies. *Id.* at 1323.

Alternatively, CEMA also fails under the Pike balancing test, which invalidates a state law that imposes burdens on interstate commerce "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). On the one hand, CEMA's local benefits are illusory: consumers don't need CEMA to protect them from receiving unwanted commercial emails, since CAN-SPAM already provides comprehensive protection. Unlike CEMA, CAN-SPAM provides a single federal framework that allows businesses engaged in interstate commerce, like Cozy Earth, to design one set of

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 12
Case No. 2:25-cv-2019

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

compliant email practices applicable across all states. CEMA, by contrast, adds Washington-specific standards to a medium that is inherently interstate, without materially increasing consumer protection beyond what CAN-SPAM already provides.

By contrast, CEMA's burden on interstate commerce is substantial. By imposing Washington-specific email content standards on nationwide retailers, CEMA effectively forces businesses to identify and treat Washington addresses differently or eliminate them altogether—an impossible and costly task given that domain registration data rarely reflects a recipient's current location. Courts have held that similar state statutes violate the Dormant Commerce Clause. *See, e.g., Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633, 639 (9th Cir. 1993) (finding state statute unconstitutional where it would force the NCAA to adopt Nevada's regulations for use in all states and would subject it to inconsistency). This is exactly the patchwork of inconsistent regulation the federal CAN-SPAM Act was enacted to prevent. *See Virtumundo*, 575 F.3d at 1062–63 (warning that absent a federal standard, "one state's Internet laws may impose compliance costs on businesses throughout the country."). Washington's interest in policing commercial email within its borders does not justify a statute that governs emails transmitted nationwide.

**d. Plaintiff's CPA Claim Fails Because It Depends On His Failed CEMA Claim**

Plaintiff's CPA claim is based entirely on Defendant's alleged CEMA violations. (*See* Compl. ¶¶ 65–80.) Because Plaintiff's CEMA claim fails for the reasons above, his CPA claim is "likewise inadequate and [] properly dismissed." *Virtumundo*, 575 F.3d at 1065.

**V. CONCLUSION**

Because Plaintiff's strict-liability theory cannot survive preemption on any set of facts, amendment would be futile, and the Complaint should be dismissed with prejudice. *See Lucky Star Enters. III, LLC v. Wells Fargo Bank, N.A.*, 585 F. Supp. 3d 1297, 1304 (W.D. Wash. 2022) (dismissing preempted claims with prejudice). For the foregoing reasons, Defendant respectfully request that the Court dismiss Plaintiff's Complaint with prejudice.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 13
Case No. 2:25-cv-2019

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828

Dated:  December 19, 2025

Respectfully submitted,

*/s/ Meegan B. Brooks*_____
MEEGAN B. BROOKS (WA 62516)
Christopher E. Stretch (admitted *pro hac vice*)
**BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
Telephone:  628.600.2232
mbrooks@beneschlaw.com
cstretch@beneschlaw.com

*Attorneys for Defendant
Cozy Earth Holdings, Inc.*

## **DECLARATION OF COMPLIANCE WITH STANDING ORDER AND LOCAL RULES**

I hereby certify that throughout December of 2025, in compliance with Section 6 of the Standing Order for Civil Cases Assigned to Judge Richard A. Jones, I attempted to meet and confer with Plaintiff's counsel to discuss the issues raised in this Motion but could not resolve the issues to obviate the need for this Motion.  I further certify that the word count for this Motion complies with Local Rule 7(e) and does not exceed 8,400 words (5,069 words).

*/s/ Meegan B. Brooks*_____
MEEGAN B. BROOKS (WA 62516)

*Attorneys for Defendant
Cozy Earth Holdings, Inc.*

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 14
Case No. 2:25-cv-2019

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of December, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system.

/s/ Meegan B. Brooks
MEEGAN B. BROOKS (WA 62516)

*Attorneys for Defendant*
*Cozy Earth Holdings, Inc.*

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT - 15
Case No. 2:25-cv-2019

**Benesch Friedlander Coplan & Aronoff, LLP**
100 Pine Street, Suite 3100
San Francisco, CA 94111
TEL (628) 600-2250  FAX (628) 221-5828