UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GIAUNIE HENDRIX, individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br> v. <br><br> COZY EARTH HOLDINGS, INC., <br><br> *Defendant.* | Case No. 2:25-cv-02019-RAJ <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** <br><br> NOTE ON MOTION CALENDAR: <br><br> February 27, 2026 <br><br> **ORAL ARGUMENT REQUESTED** |

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

**Table of Contents**

I.      Introduction. ...................................................................................................................1

II.     Cozy Earth violates CEMA by sending emails with deceptive subject lines advertising fake sales. ...................................................................................................................1

III.    CAN-SPAM does not preempt Plaintiff's CEMA claim. ...........................................3

        A.      CAN-SPAM expressly preserves state statutes, like CEMA's subject-line provision, that prohibit falsity or deception in commercial emails. ...................3

        B.      Cozy Earth's argument that Plaintiff must allege all elements of traditional fraud to avoid preemption is wrong and has been repeatedly rejected. ...........4

                1.      The plain text of CAN-SPAM's preemption savings clause does not require all elements of traditional fraud. ...................................6

                2.      CAN-SPAM's other provisions confirm that the savings clause is not limited to traditional fraud. ...................................8

                3.      The purpose and legislative history of CAN-SPAM confirm that its savings clause is not limited to traditional fraud. ...................................9

        C.      Plaintiff plausibly alleges materiality, which is all that is required. ...................... 11

        D.      Although not required, Plaintiff plausibly alleges scienter. ...................... 14

IV.     Plaintiff adequately alleges a CEMA violation. ...................................................... 14

V.      The dormant Commerce Clause does not render CEMA unconstitutional. ...................................... 15

        A.      The dormant Commerce Clause does not apply because Congress has explicitly authorized state statutes, like CEMA, that prohibit falsity or deception in emails. .......... 15

        B.      Cozy Earth has not met its high burden of proving unconstitutionality under the *Pike* test. ...................................................................................................................... 17

        C.      There is no freestanding "extraterritoriality" challenge, and Cozy Earth's attempt at one fails anyway. ...................................................................................................................... 19

VI.     Plaintiff adequately alleges his CPA claim. ...................................................................... 22

VII.    Conclusion. ...................................................................................................................... 22

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

i

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

**Table of Authorities**

**Cases**

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC,*
622 F. Supp. 2d 935 (N.D. Cal. 2009) ................................................................................6, 7, 8, 9

*Asis Internet Servs. v. Member Source Media, LLC,*
2010 U.S. Dist. LEXIS 47865 (N.D. Cal. Apr. 20, 2010) ...............................................................6

*Asis Internet Servs. v. Subscriberbase Inc.,*
2010 U.S. Dist. LEXIS 33645 (N.D. Cal. Apr. 1, 2010) ....................................................6, 7, 11

*Balsam v. Trancos, Inc.,*
138 Cal. Rptr. 3d 108 (Cal. Ct. App. 2012) ...................................................................................6

*Beyond Sys. v. Keynetics, Inc.,*
422 F. Supp. 2d 523 (D. Md. 2006) ...............................................................................15, 16, 19

*Black Star Farms LLC v. Oliver,*
600 F.3d 1225 (9th Cir. 2010) .......................................................................................................17

*Brown v. Old Navy, LLC,*
567 P.3d 38 (Wash. 2025) ................................................................. 2, 5, 12, 14, 15, 18, 22

*Brummett v. Washington's Lottery,*
288 P.3d 48 (Wash. Ct. App. 2012) ...........................................................................................14

*Campagnolo S.R.L. v. Full Speed Ahead, Inc.,*
2010 U.S. Dist. LEXIS 46176 (W.D. Wash. May 11, 2010) ...................................................... 11

*Chamber of Com. of U.S. v. Whiting,*
563 U.S. 582 (2011) .........................................................................................................................6

*DZ Rsrv. v. Meta Platforms, Inc.,*
96 F.4th 1223 (9th Cir. 2024) ........................................................................................................ 12

*Edgar v. Mite Corp.,*
457 U.S. 624 (1982) ....................................................................................................................... 20

*Evans v. DSW, Inc.,*
2017 U.S. Dist. LEXIS 220513 (C.D. Cal. Feb. 2, 2017) ........................................................... 12

*Ferguson v. Friendfinders, Inc.,*
115 Cal. Rptr. 2d 258 (Cal. Ct. App. 2002) .............................................................................. 15

*Flynt v. Bonta,*
131 F.4th 918 (9th Cir. 2025) ................................................................................17, 18, 20, 21

*FTC v. Cyberspace.com, LLC,*
453 F.3d 1196 (9th Cir. 2006) ....................................................................................................... 11

*Gordon v. Virtumundo, Inc.,*
575 F.3d 1040 (9th Cir. 2009) ................................................................................. 4, 5, 9, 10, 16

*Harrington v. Vineyard Vines, LLC,*
2025 U.S. Dist. LEXIS 262073 (W.D. Wash. Dec. 18, 2025) .......................................3, 4, 5, 14

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

ii

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

*Healy v. Beer Inst.*,
491 U.S. 324 (1989) ................................................................................................................ 19, 20

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) .......................................................................................... 11, 12, 13

*Hoang v. Reunion.com, Inc.*,
2010 U.S. Dist. LEXIS 34466 (N.D. Cal. Mar. 31, 2010) ........................................................ 6, 9, 10

*Hypertouch, Inc. v. ValueClick, Inc.*,
123 Cal. Rptr. 3d 8 (Cal. Ct. App. 2011) .................................................................. 6, 7, 8, 9, 11

*Int'l Franchise Ass'n v. City of Seattle*,
97 F. Supp. 3d 1256 (W.D. Wash. 2015) ................................................................................... 17

*Key v. Qualcomm Inc.*,
129 F.4th 1129 (9th Cir. 2025) ................................................................................................. 13

*Ma v. Nike, Inc.*,
2026 U.S. Dist. LEXIS 7539 (W.D. Wash. Jan. 14, 2026) ..................................... 3, 4, 5, 6, 7, 8, 10, 14

*Martin v. CCH, Inc.*,
784 F. Supp. 2d 1000 (N.D. Ill. 2011) ...................................................................................... 13

*MaryCLE, LLC v. First Choice Internet, Inc.*,
890 A.2d 818 (Md. Ct. Spec. App. 2006) ................................................................................... 15

*Meza-Carmona v. Garland*,
113 F.4th 1163 (9th Cir. 2024) .................................................................................................. 8

*Munning v. Gap, Inc.*,
2016 U.S. Dist. LEXIS 149886 (N.D. Cal. Oct. 28, 2016) ........................................................... 12

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356 (2023) .......................................................................................................15, 20, 21

*Ne. Bancorp v. Bd. of Governors of Fed. Res. Sys.*,
472 U.S. 159 (1985) ............................................................................................................ 15, 16

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
469 F.3d 348 (4th Cir. 2006) ..................................................................................................... 5

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999) .................................................................................................................. 7

*S.D. Myers, Inc. v. City & Cty. of S.F.*,
253 F.3d 461 (9th Cir. 2001) .............................................................................................17, 19, 20

*Sam Francis Foundation v. Christies, Inc.*,
784 F.3d 1320 (9th Cir. 2015) .................................................................................................. 21

*Shepherd v. Weldon Mediation Servs.*,
2012 U.S. Dist. LEXIS 201278 (W.D. Wash. Oct. 31, 2012) ........................................................ 17

*Smith v. Anastasia Inc.*,
2014 U.S. Dist. LEXIS 190886 (S.D. Cal. Sep. 15, 2014) ...................................................... 6, 7, 8

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

iii

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

*Spoklie v. Montana*,
411 F.3d 1051 (9th Cir. 2005) .................................................................................................. 18

*Stanley v. City of Sanford*,
606 U.S. 46 (2025) ......................................................................................................................8

*State v. Heckel*,
24 P.3d 404 (Wash. 2001) ............................................................. 15, 17, 18, 19, 20, 21, 22

*United States v. Salerno*,
481 U.S. 739 (1987) ................................................................................................................ 21

*Valley Bank of Nev. v. Plus Sys., Inc.*,
914 F.2d 1186 (9th Cir. 1990) .............................................................................................. 20

*Wagner v. Spire Vision*,
2014 U.S. Dist. LEXIS 26902 (N.D. Cal. Mar. 3, 2014) ............................................... 6, 7

*Wash. State Grange v. Wash. State Republican Party*,
552 U.S. 442 (2008) ................................................................................................................ 21

**Statutes**

15 U.S.C. § 7701(a)(11) ................................................................................................... 10, 16

15 U.S.C. § 7704(a) .......................................................................................................................5

15 U.S.C. § 7704(a)(2) .......................................................................................................8, 11, 19

15 U.S.C. § 7707(a)(2) ...................................................................................................................9

15 U.S.C. § 7707(b)(1) ........................................................................................................ 4, 6, 16

15 U.S.C. § 7707(b)(2) ...................................................................................................................7

RCW § 19.190.020(1)(a) ...............................................................................................................5

RCW § 19.190.020(1)(b) ............................................................................................1, 4, 15, 19

**Other Authorities**

Jack L. Goldsmith & Alan O. Sykes,
*The Internet and the Dormant Commerce Clause*, 110 Yale L.J. 785 (2001) ............................. 18, 20

S. Rep. No. 108-102 (2003) ...................................................................................... 4, 10, 16, 18

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

iv

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

## I. Introduction.

CAN-SPAM expressly exempts from preemption any state law that "prohibits falsity or deception in any portion of" an email.[1] CEMA is a state law that prohibits "false or misleading information in the subject line" of an email.[2] So CAN-SPAM does not preempt claims under this CEMA provision, which prohibits falsity or deception. Two recent decisions from this District held that CAN-SPAM did not preempt CEMA claims in cases materially identical to this one. And a unified body of case law—including these two cases and many more—has squarely rejected Cozy Earth's argument that avoiding preemption under CAN-SPAM requires pleading all elements of traditional fraud, and not just "falsity or deception." CAN-SPAM's text, structure, purpose, and legislative history all confirm this result.

Cozy Earth also argues that CEMA is facially unconstitutional under the dormant Commerce Clause. But Congress is not dormant in this area; it expressly authorized states to enforce prohibitions against false or deceptive subject lines in emails. Moreover, Cozy Earth does not even attempt to show discrimination against out-of-state commerce (in purpose or effect), which the Supreme Court and Ninth Circuit have both recently made clear is what the dormant Commerce Clause is all about. And the only (nondiscriminatory) burden on interstate commerce from CEMA's subject-line provision is that companies cannot send emails with deceptive subject lines. As Congress has said, that is something everyone can get behind. The Washington Supreme Court squarely rejected this challenge to CEMA, and courts elsewhere have rejected identical challenges to analogous statutes. This Court should too.

## II. Cozy Earth violates CEMA by sending emails with deceptive subject lines advertising fake sales.

CEMA makes it unlawful to send a commercial email to a Washington resident that "[c]ontains false or misleading information in the subject line." RCW § 19.190.020(1)(b). The Washington Supreme Court held that this provision prohibits subject lines promoting time-limited sales that are not

---

[1] CAN-SPAM stands for the Controlling the Assault of Non-Solicited Pornography and Marketing Act, a federal statute regulating commercial email.
[2] CEMA stands for the Washington Commercial Electronic Mail Act.

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

1

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

truly time-limited.  *Brown v. Old Navy, LLC*, 567 P.3d 38 (Wash. 2025).  CEMA "protects consumers by requiring that commercial e-mails communicate honestly about the terms of a given promotion or sale in the subject line."  *Id.* at 47.  So email subject lines that "announced offers that were available for longer than the time stated in the subject line" or "falsely suggested an offer was ending" were unlawful. *Id.* at 42.  Cozy Earth's emails are unlawful for this reason.

Cozy Earth sells bedding, clothing, and home décor products to consumers through its website. Dkt. 1-1 ("Compl.") ¶ 14.  To get people to buy its products, it sends emails with subject lines promoting purported time-limited sales.  Here are some examples of subject lines in Cozy Earth's emails to Plaintiff:

- "Memorial Day Deals End Tomorrow!"  *Id.* ¶ 19.
- "Ending soon..." (referring to purported savings of "UP TO 25% OFF SITEWIDE"). *Id.* ¶ 27.
- "The New Year's Sale Ends TONIGHT!"  *Id.* ¶30.
- "One Day Left!" (referring to a sale).  *Id.*
- "The Presidents Day Sale Ends TONIGHT!"  *Id.*

When reasonable consumers see these subject lines, they believe that if they buy during the time-limited sale, they will receive a discount off Cozy Earth's regular prices.  *Id.* ¶ 18.  And they believe that if they do not buy during the time-limited sale, they will not receive a discount—because, for example, the discounts "End Tomorrow."  *Id.*  This creates a sense of urgency: buy now, and you get a discount; if you wait, you will pay the regular price.  *Id.* ¶¶ 18, 39.

In reality, the promoted discounts are neither true discounts nor truly time-limited.  That is because Cozy Earth almost always offers substantial sitewide discounts on its products.  *Id.* ¶¶ 17, 21, 31, 37-38.  Its "sales do not end—they just roll over into a 'new' promotion that offers materially similar discounts."  *Id.* ¶ 21.  For example, the Memorial Day sale that supposedly ended "Tomorrow" (June 5, 2023) was extended, and then continuously rolled over into new sales ("Summer Sale," "Fourth of July Sale," "Cozy Days" sale, another "Summer Sale," "Semi-Annual Sale," and so on) through the rest of the year.  *Id.* ¶¶ 22-25; *see id.* ¶¶ 27-28 (describing the same pattern for the "Ending Soon…" sale).  An

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

2

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

investigation of Cozy Earth's website showed that from January 2021 to at least June 2025, Cozy Earth offered a similar sale each month. *Id.* ¶ 31. Thus, Cozy Earth's sales are not time-limited; they are consistently available. *Id.* ¶ 37. And the discounts they advertise are not true discounts, because the advertised regular prices are not the prices that Cozy Earth regularly sells its products for. *Id.* ¶ 38.

Therefore, Cozy Earth's email subject lines are deceptive in two ways: (1) they trick consumers into thinking that the purported discounts are time-limited and (2) they trick consumers into thinking that the purported discounts are really discounts off the regular prices. *Id.* ¶ 17. Cozy Earth knows that, in reality, the purported discounts are almost always available and are not true discounts off its regular prices. *Id.* ¶ 42. But it sends these deceptive emails anyway, to induce recipients to make purchases during the supposedly time-limited sales. *Id.* ¶ 40.

Thus, Cozy Earth violates CEMA by sending emails with deceptive subject lines. Cozy Earth's motion does not dispute that this conduct violates CEMA.

## III. CAN-SPAM does not preempt Plaintiff's CEMA claim.

Cozy Earth argues that CAN-SPAM, which regulates commercial emails at the federal level, preempts Plaintiff's CEMA claim. Two recent decisions from this District rejected this argument in an identical context. *Ma v. Nike, Inc.*, 2026 U.S. Dist. LEXIS 7539, at *4-9 (W.D. Wash. Jan. 14, 2026) (CAN-SPAM did not preempt CEMA claim for subject lines promoting deceptive sales); *Harrington v. Vineyard Vines, LLC*, 2025 U.S. Dist. LEXIS 262073, at *2-5 (W.D. Wash. Dec. 18, 2025) (same). These cases are indistinguishable from this case. *See Ma*, 2026 U.S. Dist. LEXIS 7539, at *2 (email subject lines "falsely claimed that Nike was offering discounts or sales that expired after a specific period of time"); *Harrington*, 2025 U.S. Dist. LEXIS 262073, at *4 ("Vineyard falsely or deceptively worded its subject lines … to create a sense of urgency about a sale ending … when it knew that the sale would actually continue …."). And these cases are correct.

### A. CAN-SPAM expressly preserves state statutes, like CEMA's subject-line provision, that prohibit falsity or deception in commercial emails.

CAN-SPAM's express preemption provision has a savings clause (an express carve-out from preemption):

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

3

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, <u>except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto</u>.

15 U.S.C. § 7707(b)(1) (emphasis added). Thus, CAN-SPAM expressly does not preempt state laws that prohibit "falsity or deception in any portion" of an email. *Id.*

CEMA's subject-line provision prohibits falsity or deception in a portion (the subject line) of an email.[3] It prohibits any commercial email that "[c]ontains false or misleading information in the subject line." RCW § 19.190.020(1)(b). So, as two courts in this District held, "[b]ecause CEMA's subject-line provision prohibits only 'falsity' or 'deception' in the subject-line of commercial e-mails, it 'falls squarely within this area reserved to the States.'" *Ma*, 2026 U.S. Dist. LEXIS 7539, at *5 (quoting *Harrington*, 2025 U.S. Dist. LEXIS 262073, at *2).

**B.      Cozy Earth's argument that Plaintiff must allege all elements of traditional fraud to avoid preemption is wrong and has been repeatedly rejected.**

Citing *Virtumundo,* Cozy Earth argues that CAN-SPAM's preemption clause requires Plaintiff to prove all elements of traditional fraud—including reliance, damages, and scienter—to avoid preemption. Dkt. 15 ("Mot.") 5-7, 10-11 (citing *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009)). The two decisions from this District that have considered this argument based on *Virtumundo* have rejected it. And here, like in those cases, Cozy Earth's reliance on *Virtumundo* is misplaced for two reasons.

First, *Virtumundo* involved a different provision of CEMA that had different preemption concerns. *See Harrington*, 2025 U.S. Dist. LEXIS 262073, at *3-4 (defendant's reliance on *Virtumundo* was "misplaced" because *Virtumundo* "did not address whether CAN-SPAM preempts the subsection of CEMA that is at issue in this matter"); *Ma*, 2026 U.S. Dist. LEXIS 7539, at *6 ("*Virtumundo*, however, dealt with commercial e-mails with header information that misrepresented the senders' identity."). *Virtumundo* was about CEMA's prohibition on emails that "misrepresent[] or obscure[] any information in identifying the point of origin or the transmission path" (e.g., disguising the true sender of the email).

---

[3] Cozy Earth does not—and cannot—argue that a subject line is not a covered "portion of" an email. *See* S. Rep. No. 108-102, at 21 (2003) (stating that the carve-out would cover "subject lines").

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

4

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

*Virtumundo*, 575 F.3d at 1059 (quoting RCW § 19.190.020(1)(a)). That CEMA provision potentially reached farther than only false or deceptive statements: the "broad definitions [of 'misrepresent' and 'obscure'] extend CEMA's prohibitive reach and purport to regulate a vast array of non-deceptive acts and practices," so as to potentially impose liability for "unintentional clerical errors, imperfect representations, or immaterial misstatements." *Id.* (quotation omitted). By contrast, the provision at issue here is narrower and "prohibits only 'falsity' or 'deception' in the subject-line of commercial e-mails," so it "falls squarely within this area reserved to the States." *Ma*, 2026 U.S. Dist. LEXIS 7539, at *5 (quoting *Harrington*, 2025 U.S. Dist. LEXIS 262073, at *2); *see Brown*, 567 P.3d at 47 (CEMA's subject-line provision does not prohibit "mere puffery").

Second, *Virtumundo* did not hold that, to escape preemption, a CEMA claim must allege all elements of common law fraud (including reliance, damages, and scienter). *Virtumundo*'s analysis and holding was limited to materiality, which Plaintiff alleges here. *Infra* § III.C. The Ninth Circuit reasoned that "the word 'deception' certainly denotes something more than immaterial inaccuracies or inadvertent mistakes." *Virtumundo*, 575 F.3d at 1062. And it concluded that "falsity" should be understood in line with "traditionally tortious or wrongful conduct," which requires material falsity. *Id.* (quoting *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006)). Further support for this reading came from CAN-SPAM's substantive prohibitions, which outlaw "only *deceptive* subject line headings or *materially* false or *materially* misleading header information." *Id.* (citing 15 U.S.C. § 7704(a)). So the Ninth Circuit held that CAN-SPAM preempted claims that alleged nothing more than, "at most, non-deceptive statements or omissions." *Id.* at 1064.

*Virtumundo* says nothing about reliance, damages, or scienter. And since *Virtumundo* was decided, courts in this Circuit have consistently rejected defendants' attempts to expand its holding to require these additional elements. *See, e.g.*, *Ma*, 2026 U.S. Dist. LEXIS 7539, at *7 (rejecting argument that a "CEMA claim is preempted because the claim is not based on traditional tort theories like fraud or deceit"); *id.* at *7-8 ("District courts have agreed on a broader interpretation that reliance and damages are not necessary for the preemption clause to apply."); *Harrington*, 2025 U.S. Dist. LEXIS 262073, at *3-5 (CEMA claim for deceptive subject lines not preempted even though CEMA does not

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

5

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

require scienter, reliance, or injury); *Wagner v. Spire Vision*, 2014 U.S. Dist. LEXIS 26902, at *8 (N.D. Cal. Mar. 3, 2014) ("The great weight of district court and state court decisions have agreed that a showing of reliance and damages is not necessary."); *Smith v. Anastasia Inc.*, 2014 U.S. Dist. LEXIS 190886, at *7 (S.D. Cal. Sept. 15, 2014) (joining this "great weight" of authority); *Asis Internet Servs. v. Member Source Media, LLC*, 2010 U.S. Dist. LEXIS 47865, at *9 (N.D. Cal. Apr. 20, 2010) ("Asis need not plead reliance and damages in order for its claim to be excepted from preemption."); *Asis Internet Servs. v. Subscriberbase Inc.*, 2010 U.S. Dist. LEXIS 33645, at *34-39 (N.D. Cal. Apr. 1, 2010) (rejecting argument that CAN-SPAM requires all traditional fraud elements to avoid preemption); *Hoang v. Reunion.com, Inc.*, 2010 U.S. Dist. LEXIS 34466, at *15-20 (N.D. Cal. Mar. 31, 2010) (same); *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 942-44 (N.D. Cal. 2009) (same); *Balsam v. Trancos, Inc.*, 138 Cal. Rptr. 3d 108, 122-23 (Cal. Ct. App. 2012) ("CAN-SPAM Act's savings clause applies to any state law that prohibits material falsity or material deception in a commercial e-mail regardless of whether such laws require the plaintiff to prove and plead each and every element of common law fraud.") (quotation omitted); *Hypertouch, Inc. v. ValueClick, Inc.*, 123 Cal. Rptr. 3d 8, 29 (Cal. Ct. App. 2011) (CAN-SPAM did not preempt claims under state statute, even though the statute did not require reliance, damages, or scienter).

As these courts have recognized, CAN-SPAM's text, structure, purpose, and legislative history confirm that all a plaintiff need to allege to avoid preemption is "falsity" or "deception"—not reliance, damages, or scienter.

### 1. The plain text of CAN-SPAM's preemption savings clause does not require all elements of traditional fraud.

"When a federal law contains an express preemption clause, … the plain wording of the clause … necessarily contains the best evidence of Congress' preemptive intent." *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 594 (2011) (quotation omitted).

Under the plain text of CAN-SPAM's preemption provision, all that is required to fall within the savings clause is "falsity" or "deception." 15 U.S.C. § 7707(b)(1). "[B]y their plain terms, 'falsity' and 'deception' do not equate to common law fraud." *Ma*, 2026 U.S. Dist. LEXIS 7539, at *7. Rather,

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

6

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

falsity is just one element of a traditional fraud claim.  Reliance, damages, and scienter are other elements, each requiring something different than falsity.  Cozy Earth would rewrite the savings clause to say, "except to the extent that any such statute, regulation, or rule prohibits falsity or deception, <u>along with reliance, damages, and scienter,</u> in any portion of a commercial electronic mail message or information attached thereto."  This is a meaning that the text does not bear.  If Congress had intended the savings clause to apply only to complete fraud claims (with all elements), it would not have listed only a single element.  By its plain meaning, "falsity" (one element of a fraud claim) does not refer to "fraud" as a whole.  *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("[S]ynecdoche … is incompatible with the need for precision in legislative drafting.").

Thus, courts have repeatedly recognized that the "explicit language of the preemption clause betrays no intention by Congress to limit state regulation to the simple codification of common law fraud in its purest form."  *Subscriberbase*, 2010 U.S. Dist. LEXIS 33645, at *34-35; *Wagner*, 2014 U.S. Dist. LEXIS 26902, at *9 (same); *Hypertouch*, 123 Cal. Rptr. 3d at 24 (same).  "On its own terms, the savings clause exempts from preemption not only 'fraud' claims but rather laws that proscribe 'falsity or deception' in email advertisements."  *Consumerbargaingiveaways*, 622 F. Supp. 2d at 942; *Smith*, 2014 U.S. Dist. LEXIS 190886, at *7 (same); *see Ma*, 2026 U.S. Dist. LEXIS 7539, at *7.

Moreover, if Congress had intended the savings clause to apply only to fraud claims (with all the traditional elements), it would have used the word "fraud."  *See Ma*, 2026 U.S. Dist. LEXIS 7539, at *7 ("Congress would have explicitly used the language of fraud in the CAN-SPAM Act if it intended to limit the exception to fraud alone.").  It would not have confusingly used "falsity or deception" instead.  "Congress … is certainly familiar with the word 'fraud' and [chose] not to use it; the words 'falsity *or* deception' suggest broader application."  *Consumerbargaingiveaways*, 622 F. Supp. 2d at 942; *Smith*, 2014 U.S. Dist. LEXIS 190886, at *7 (same).

In fact, Congress used the word "fraud" in the very next subsection of the preemption provision: "This chapter shall not be construed to preempt the applicability of … other State laws to the extent that those laws relate to acts of fraud or computer crime."  15 U.S.C. § 7707(b)(2); *see Consumerbargaingiveaways*, 622 F. Supp. 2d at 942 (finding it relevant that "Congress utilized the word

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

7

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

'fraud' in the very next subsection but not in the savings clause"); *Ma*, 2026 U.S. Dist. LEXIS 7539, at *7 (same); *Smith*, 2014 U.S. Dist. LEXIS 190886, at *7 (same). The different language in the savings clause ("falsity or deception") and the next provision ("fraud") show that these words carry different meanings. "Interpreting the phrase 'falsity or deception' to mean fraud, when the very next section of the statute actually uses the word fraud, would contravene the principle that when different words are used in contemporaneously enacted, adjoining subdivisions of a statute, the inference is compelling that a difference in meaning was intended." *Hypertouch*, 123 Cal. Rptr. 3d at 24 (cleaned up); *see Stanley v. City of Sanford*, 606 U.S. 46, 53 (2025) ("That Congress used different language in these two provisions strongly suggests that it meant for them to work differently.").

### 2. CAN-SPAM's other provisions confirm that the savings clause is not limited to traditional fraud.

"Under the presumption of consistent usage, a word or phrase is presumed to bear the same meaning throughout a text." *Meza-Carmona v. Garland*, 113 F.4th 1163, 1167 (9th Cir. 2024) (quotation omitted). CAN-SPAM "refers to falsity and deception not only in its preemption provision but also in its substantive provisions." *Consumerbargaingiveaways*, 622 F. Supp. 2d at 942. These provisions confirm that falsity and deception are not limited to common-law fraud.

For example, CAN-SPAM prohibits "deceptive subject headings." 15 U.S.C. § 7704(a)(2). A subject heading is "deceptive" if it "would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." *Id.* So CAN-SPAM's own prohibition of deceptive subject headings does not require reliance, damages, or intent to mislead. Under principles of statutory construction, the preemption clause's use of "deception" must not either. *Meza-Carmona*, 113 F.4th at 1167.

Similarly, that same deceptive-subject-heading provision "expressly directs that the word 'deceptive' … should be understood not as referencing common-law fraud (nor the tort of deception) but rather deception as utilized in the FTC Act." *Consumerbargaingiveaways*, 622 F. Supp. 2d at 942; *see* 15 U.S.C. § 7704(a)(2) (prohibition should be applied "consistent with the criteria used in enforcement of [the FTC Act]."). And the FTC Act's concept of deception is "much broader than common law fraud."

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

8

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

*Hypertouch*, 123 Cal. Rptr. 3d at 24. "Unlike common law fraud, to establish liability for deceptive statements under the FTC Act neither proof of consumer reliance nor consumer injury is necessary to establish a violation," and "[i]ntent to deceive is also not required." *Id.* (cleaned up). This further shows that the concept of deception—throughout CAN-SPAM—does not require all the elements of traditional fraud.

Another provision in the same section as the preemption clause also references the FTC Act standard for deception: "Nothing in this chapter shall be construed to affect in any way the Commission's authority to bring enforcement actions under FTC Act for materially false or deceptive representations." 15 U.S.C. § 7707(a)(2). As just described, FTC enforcement actions for "false or deceptive" representations do not require reliance, injury, or scienter. CAN-SPAM's "repeated references to the FTC Act definition of 'deceptive' practices strongly suggest that Congress intended the phrase 'falsity or deception' in Section 7707(b)(1) to refer to, or at least encompass, that definition, not just state tort law." *Consumerbargaingiveaways*, 622 F. Supp. 2d at 942; *see Hypertouch*, 123 Cal. Rptr. 3d at 24 (applying this same reasoning).

### 3. The purpose and legislative history of CAN-SPAM confirm that its savings clause is not limited to traditional fraud.

"[A]ny understanding of the scope of a pre-emption statute must rest primarily on a fair understanding of *congressional purpose*." *Virtumundo*, 575 F.3d at 1060 (quotation omitted). Here, Congress's purpose was to create uniform standards for email content, while preserving state statutes (like CEMA's subject-line provision) prohibiting deception in emails.

Congress enacted CAN-SPAM against a backdrop of various state laws regulating commercial emails. Some of these state laws regulated the format or content of the emails (for example, by requiring specific labels or content), and some—including CEMA's subject-line provision—prohibited deception. These laws "were in effect before Congress enacted CAN-SPAM, and, thus, Congress is presumed to have been aware of such laws at the time it enacted CAN-SPAM." *Hoang*, 2010 U.S. Dist. LEXIS 34466, at *19. Against this backdrop, Congress drew a careful line: "a State law requiring some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

9

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

specified content, would be preempted.  By contrast, a State law prohibiting fraudulent or deceptive headers, subject lines, or content in commercial e-mail would not be preempted."  S. Rep. No. 108-102, at 21.[4]

This makes sense, because "the purpose of the CAN-SPAM Act was to impose a single national standard for the *content* of commercial e-mail."  *Ma*, 2026 U.S. Dist. LEXIS 7539, at *8 (emphasis added).  Congress wanted to avoid a "patchwork" of content regulations, which made it difficult for businesses to ensure their emails complied with all applicable laws.  *See Virtumundo*, 575 F.3d at 1062; 15 U.S.C. § 7701(a)(11).  But "[s]tatutes that prohibit fraud and deception in e-mail do not raise the same concern, because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway."  S. Rep. No. 108-102, at 21-22; *see Ma*, 2026 U.S. Dist. LEXIS 7539, at *8-9 (quoting this language).  So Congress intended to leave the existing state prohibitions of deceptive emails—including CEMA's subject-line provision—intact.

Congress knew that these existing state statutes (like CEMA) did not require plaintiffs to prove reliance, damages, or scienter.  *See Hoang*, 2010 U.S. Dist. LEXIS 34466, at *19.  And, with that knowledge, Congress wrote a preemption provision stating that statutes prohibiting falsity or deception in emails are not preempted—with no mention of reliance, damages, or scienter.  If Congress had intended to preempt all state laws that did not require these elements (of which there were many), it would have included these requirements in the savings clause.  Instead, it omitted them because CEMA's subject-line provision is exactly the kind of state law it wanted to preserve.  Thus, "[r]eading the phrase 'falsity or deception' as encompassing something broader than common law fraud also finds support in the legislative history."  *Ma*, 2026 U.S. Dist. LEXIS 7539, at *8.

Other courts have similarly recognized that state laws like CEMA's subject-line provision are consistent with CAN-SPAM's purpose.  Imposing "liability for e-mails containing deceptive … information without requiring the traditional elements of fraud does not alter the 'uniform standard'

---

[4] *See Virtumundo*, 575 F.3d at 1062 (citing this Senate Report to understand the scope of CAN-SPAM's preemption clause).  As courts have observed, the "term 'deception' would be redundant (if not misleading) if Congress meant to limit state regulation solely to common law fraud."  *Subscriberbase*, 2010 U.S. Dist. LEXIS 33645, at *35.

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

10

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

governing commercial e-mail content established under the CAN-SPAM Act." *Hypertouch*, 123 Cal. Rptr. 3d at 26. "The elements of reliance and damages, for example, have nothing to do with the content of an e-mail." *Id.* So "adding the traditional fraud elements of reliance and damages does not add anything to Congress's efforts to create a uniform system of regulation governing email advertisements." *Subscriberbase*, 2010 U.S. Dist. LEXIS 33645, at *36; *see id.* ("[T]he elements of reliance and damages do not speak to the substance of the emails or subject lines that are prohibited."). Indeed, given Congress's focus on the sender, it would make no sense to have preemption turn on "the naivete, vulnerability, or circumstance of the recipient"—i.e., whether the recipient relied on or was injured by the email. *Id.*; *see id.* ("The difference between deception in the strict 'fraud' sense, and deception without reliance and damages, is merely the difference between actual and attempted fraud."). "Similarly, imposing strict liability for advertising in commercial e-mails that contain materially deceptive content does not alter the type of content that might subject a defendant to liability." *Hypertouch*, 123 Cal. Rptr. 3d at 26. So preempting all state laws lacking reliance, damages, and scienter requirements was unnecessary to achieve Congress's goal of a uniform standard for email content—and antithetical to its goal of preserving state statutes that prohibit deception.

### C. Plaintiff plausibly alleges materiality, which is all that is required.

The "materiality of a misrepresentation is typically an issue of fact, and therefore should not be decided at the motion to dismiss stage." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 n.7 (9th Cir. 2013). Here, Plaintiff's allegations are more than sufficient to plausibly allege materiality.

CAN-SPAM draws its notion of materiality from the FTC Act. 15 U.S.C. § 7704(a)(2). There, as elsewhere, a misrepresentation is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) (quoting *Cliffdale Associates, Inc.*, 103 F.T.C. 110, 165 (1984)); *see, e.g.*, *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, 2010 U.S. Dist. LEXIS 46176, at *27 (W.D. Wash. May 11, 2010) (misrepresentations "are material if they are likely to influence the purchasing decision").

Both the Ninth Circuit and the Washington Supreme Court have recognized that falsely advertising time-limited discounts is material to reasonable consumers' purchasing decisions. In *Hinojos*,

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

11

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

a plaintiff adequately pleaded materiality by alleging that the defendant "falsely markets its products at reduced prices precisely because consumers such as himself reasonably regard price reductions as material information when making purchasing decisions." *Hinojos*, 718 F.3d at 1107. In *Brown*, the Washington Supreme Court observed that "the duration or availability of a promotion, its terms and nature, [and] the cost of goods" are "facts Washington residents would depend on in making their consumer decisions." *Brown*, 567 P.3d at 47. Other courts are in accord. *See, e.g.*, *Evans v. DSW, Inc.*, 2017 U.S. Dist. LEXIS 220513, at *27 (C.D. Cal. Feb. 2, 2017) ("[T]he Court can easily appreciate that discounts are material to the average shopper. The impression one is getting a deal is precisely why reference pricing is a popular way to attract customers …."); *Munning v. Gap, Inc.*, 2016 U.S. Dist. LEXIS 149886, at *23 (N.D. Cal. Oct. 28, 2016) (finding "advertised price reductions were material").

Here, like in these cases, Plaintiff plausibly alleges that Cozy Earth's misrepresentations about its purported sales are likely to affect reasonable consumers' purchasing decisions. He alleges that "[a]dvertised 'sale' discounts are important to consumers," and that "[c]onsumers are more likely to purchase an item if they know that they are getting a good deal." Compl. ¶ 4. Therefore, when consumers receive an email stating that a purported "sale" is occurring, they are more likely to purchase a product from Cozy Earth because they will think they are getting a good deal. Indeed, this is precisely why Cozy Earth sends its misleading emails: "to induce recipients to make a purchase during its supposedly limited-time sales." *Id.* ¶ 40. Plus, "if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else." *Id.* ¶ 4. So Cozy Earth's representations that its purported "sales" are ending soon "spur[s] recipients to make purchases immediately before time runs out." *Id.* ¶ 40. These are precisely the allegations that the Ninth Circuit, Washington Supreme Court, and other courts have held sufficiently allege materiality.

Cozy Earth argues that "[t]o establish materiality, Plaintiff was required to show that the subject lines were material to his own purchasing decisions." Mot. 7. But that is not materiality; that is reliance. Materiality and reliance are two distinct concepts. Materiality is an objective standard that asks whether the information is important to reasonable consumers. *See, e.g.*, *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1235 (9th Cir. 2024) ("[M]ateriality is an objective inquiry …."). Reliance is a subjective inquiry

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

12

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

that asks whether the individual plaintiff in fact relied on the information. *See, e.g.*, *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1141 (9th Cir. 2025) ("[R]eliance is the causal mechanism of fraud.") (quotation omitted). One does not depend on or follow from the other: information can be important to most reasonable consumers even if the plaintiff did not subjectively rely on it, and a plaintiff can rely on information even though it is not important to others. That is why materiality and reliance are two different elements. And that is why so many cases have held that, while *Virtumundo* requires materiality, it does not require reliance. *See* cases cited *supra* pp. 5-6.

Cozy Earth also argues that the "subject line is not material because it would not drive a customer to make a purchase." Mot. 8. It asserts that "[n]o reasonable consumer expects a subject line to contain detailed pricing information, such as how often items may have been on sale or whether a promotion might later be extended." Mot. 9. But a subject line can be materially misleading without containing "detailed pricing information." For example, the subject line "The New Year's Sale Ends TONIGHT!" conveys that a consumer can buy a product for a sale price (i.e., lower than usual) and can do so only for a limited time (i.e., through tonight). Compl. ¶ 30. The complaint plausibly alleges that this information is important to consumers and affects their purchasing decisions because consumers are more likely to buy a product if they think they are getting a good deal. *Id.* ¶ 4. And it plausibly alleges that "if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else." *Id.*; *see id.* ¶ 40. Cozy Earth may disagree, but this is a factual dispute that cannot be resolved on a motion to dismiss. *See Hinojos*, 718 F.3d at 1107 n.7.

Cozy Earth's reliance on *Martin v. CCH, Inc.*, 784 F. Supp. 2d 1000 (N.D. Ill. 2011), is misplaced and illustrates the flaws in its argument. In *Martin*, the plaintiff alleged that email subject lines were misleading because they failed to disclose that opening the emails would provide private information about the plaintiff to the defendant, "such as his IP address and the time he opened the e-mails." *Id.* at 1007. Therefore, that claim was merely for "'incomplete' or 'less than comprehensive information.'" *Id.* Here, Plaintiff's claim is not merely that Cozy Earth's subject lines are incomplete or contain less than comprehensive information; it is that they are affirmatively misleading. The subject lines here do not just lack information, they affirmatively misrepresent that Cozy Earth is offering a discount off its

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

13

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

regular prices, and that this purported discount is time-limited. That is exactly the type of "falsity or deception" for which CAN-SPAM's savings clause exists. *See, e.g.*, *Ma*, 2026 U.S. Dist. LEXIS 7539, at *4-9; *Harrington*, 2025 U.S. Dist. LEXIS 262073, at *2-5.

Finally, Cozy Earth argues that "statements that create an alleged false sense of urgency are not material." Mot. 9. The case it cites held that a statement that tickets were "going fast" was not material. *Brummett v. Washington's Lottery*, 288 P.3d 48, 55 (Wash. Ct. App. 2012). At the same time, the court recognized that other statements, such as those about "early bird" raffle prizes, could be material because they create a false sense of urgency, but the defendant did not make those statements. *Id.* Plus, the Washington Supreme Court has expressly held, in the context of a CEMA case about fake discounts, that "the duration … of a promotion" is a "representations of fact" that "Washington residents would depend on in making their consumer decisions." *Brown*, 567 P.3d at 47. In any event, Cozy Earth's misrepresentations are not just about the duration of the sale; they are also about the existence of the sale, because the purported discounts are not true discounts off Cozy Earth's regular prices.

### D. Although not required, Plaintiff plausibly alleges scienter.

Although not required under either CEMA or CAN-SPAM, Plaintiff plausibly alleges scienter. He alleges that Cozy Earth knows that its subject lines are false and deceptive because it "knows what sales it is offering and knows that, in truth, it almost always offers sales and the sales are not truly ending soon." Compl. ¶ 42. And he alleges that Cozy Earth creates and sends these deceptive subject lines to induce consumers to rely on them and purchase a product based on a fictitious sale: "Cozy Earth designs the subject lines of its promotional emails to induce recipients to make a purchase during its supposedly limited-time sales." *Id.* ¶ 40. Cozy Earth's argument that "Plaintiff does not contend that Cozy Earth intended to mislead him or anyone else" ignores these allegations. Mot. 11.

### IV. Plaintiff adequately alleges a CEMA violation.

Cozy Earth asserts that "Plaintiff does not adequately allege a CEMA violation," but does not actually contest that Plaintiff pleads the elements of a CEMA violation. Mot. 11 (capitalization removed). Instead, it argues that Plaintiff does not allege "key elements of a traditional misrepresentation-tort claim," in line with its preemption argument. Mot. 11. But Plaintiff is not

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

14

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

bringing a traditional misrepresentation-tort claim; he is bringing a claim under CEMA (which does not require reliance, damages, or scienter). Cozy Earth violated CEMA because its subject lines are materially false and misleading. *Supra* § II; *see* RCW § 19.190.020(1)(b); *Brown*, 567 P.3d at 47.

## V. The dormant Commerce Clause does not render CEMA unconstitutional.

Courts must use "extreme caution" before invalidating a state statute under the Dormant Commerce Clause. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 390 (2023) (quotation omitted). "Preventing state officials from enforcing a democratically adopted state law in the name of the dormant Commerce Clause is a matter of extreme delicacy, something courts should do only where the infraction is clear." *Id.* (quotation omitted).

Cozy Earth has not come close to establishing that CEMA is clearly unconstitutional under the dormant Commerce Clause. In fact, the Washington Supreme Court considered and rejected this very argument. *State v. Heckel*, 24 P.3d 404 (Wash. 2001) (conducting a thorough analysis of CEMA under the dormant Commerce Clause and holding that it is constitutional). Other state courts have concluded the same for analogous statutes. *See Ferguson v. Friendfinders, Inc.*, 115 Cal. Rptr. 2d 258 (Cal. Ct. App. 2002) (rejecting dormant Commerce Clause challenge to California statute regulating unsolicited emails sent to California residents); *MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818, 840-45 (Md. Ct. Spec. App. 2006) (rejecting dormant Commerce Clause challenge to Maryland statute that was "modeled … on" and "virtually identical to" CEMA); *Beyond Sys. v. Keynetics, Inc.*, 422 F. Supp. 2d 523, 531-36 (D. Md. 2006) (rejecting dormant Commerce Clause challenge to that same statute, and adopting reasoning of *Heckel* and *MaryCLE* in full). These courts are correct.

### A. The dormant Commerce Clause does not apply because Congress has explicitly authorized state statutes, like CEMA, that prohibit falsity or deception in emails.

The dormant Commerce Clause applies when Congress is dormant on a subject—i.e., in "congressional silence." *Pork Producers*, 598 U.S. at 390. It does not apply when Congress acts. "When Congress so chooses, state actions which it plainly authorizes are invulnerable to constitutional attack under the Commerce Clause." *Ne. Bancorp v. Bd. of Governors of Fed. Res. Sys.*, 472 U.S. 159, 174 (1985).

Here, "the commerce power of Congress is not dormant, but has been exercised by that body

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

15

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

when it enacted" CAN-SPAM. *Id.* Congress exercised its Commerce power to regulate commercial emails. And, in doing so, it expressly authorized states to enforce state laws prohibiting "falsity or deception in any portion" of an email. 15 U.S.C. § 7707(b)(1). This provision "plainly authorizes" state action under CEMA (which prohibits falsity or deception in email subject lines), so the dormant Commerce Clause does not apply. *Ne. Bancorp*, 472 U.S. at 174. The District of Maryland rejected a dormant Commerce Clause challenge to Maryland's virtually identical statute for this reason: "Congress, in enacting CAN-SPAM, expressly accorded the States the right to regulate false and misleading e-mail transmissions. If Congress itself was satisfied that supplementary state legislation would impose no undue burden on interstate commerce, this Court can hardly presume to tell Congress it is wrong." *Beyond Sys.*, 422 F. Supp. 2d at 535 (citation omitted).

CAN-SPAM's legislative history confirms that Congress knew about existing state statutes regulating commercial emails—including CEMA—and intended to preserve the states' ability to enforce prohibitions on falsity or deception. *See Ne. Bancorp*, 472 U.S. at 169 ("[T]he legislative history of the Amendment supplies a sufficient indication of Congress' intent" to authorize state action). Congress enacted CAN-SPAM with knowledge of—indeed, because of—the various state laws regulating commercial emails. 15 U.S.C. § 7701(a)(11) ("Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements."); *see Virtumundo*, 575 F.3d at 1062-63 (Congress enacted CAN-SPAM "because the patchwork of state laws had proven ineffective"). It thought about which types of regulations it wanted to unify under a national standard, and which it wanted to leave to the states. And it concluded that state laws requiring specific labels, format, or content "would be preempted," but that state laws "prohibiting fraudulent or deceptive headers, subject lines, or content in commercial e-mail would not." S. Rep. No. 108-102, at 21. Congress explained that "Statutes that prohibit fraud and deception in e-mail … target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway." *Id.* at 22. In other words, Congress intended to preserve state laws prohibiting falsity and deception, because those laws prohibit conduct that no one should be engaging in.

Thus, CAN-SPAM's preemption provision reflects the careful balance that Congress intended:

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

16

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

unify format and content regulations, but preserve state laws prohibiting falsity or deception. Congress was not dormant on this issue; it expressly considered whether to prohibit state laws targeting falsity or deception, and decided to preserve them.

**B. Cozy Earth has not met its high burden of proving unconstitutionality under the *Pike* test.**

The dormant Commerce Clause has a "two-tiered analytical framework": "(1) the anti-discrimination test—which involves heightened scrutiny and (2) the *Pike* balancing test—a lower bar." *Int'l Franchise Ass'n v. City of Seattle*, 97 F. Supp. 3d 1256, 1267 (W.D. Wash. 2015) (Jones, J.).

Cozy Earth makes no argument that CEMA discriminates against out-of-state commerce—on its face, in its purpose, or in its effect. Mot. 11-13. No variant of the word "discriminate" appears in Cozy Earth's brief. "As the Ninth Circuit has stated, '[P]rove it, or lose it.'" *Int'l Franchise*, 97 F. Supp. 3d at 1273 (quoting *Black Star Farms LLC v. Oliver*, 600 F.3d 1225, 1232 (9th Cir. 2010)); *see, e.g.*, *Shepherd v. Weldon Mediation Servs.*, 2012 U.S. Dist. LEXIS 201278, at *28 (W.D. Wash. Oct. 31, 2012) (Jones, J.) (arguments not made in opening brief are waived). Nor could it make any such argument. As the Washington Supreme Court observed, CEMA "applies evenhandedly to in-state and out-of-state spammers." *Heckel*, 24 P.3d at 409. So discrimination is out.

That leaves the *Pike* test, which sticks Cozy Earth with a "heavy burden." *Flynt v. Bonta*, 131 F.4th 918, 931 (9th Cir. 2025). "[T]he Supreme Court has not invalidated a law under *Pike* in more than 30 years." *Id.* (quotation omitted). This is not the case to break ranks.

*Pike* requires Cozy Earth to show, first, that CEMA imposes "a substantial burden on interstate commerce," and then that this "burden is clearly excessive in relation to the law's putative local benefits." *Id.* (quotation omitted). This is where the heavy burden comes in. "[F]or a facially neutral statute to violate the Commerce Clause, the burdens of the statute must so outweigh the putative benefits as to make the statute unreasonable or irrational." *Int'l Franchise*, 97 F. Supp. 3d at 1277 (quoting *S.D. Myers, Inc. v. City & Cty. of S.F.*, 253 F.3d 461, 471 (9th Cir. 2001)). Cozy Earth must "establish that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decision-maker." *Id.* (citing *Spoklie v. Montana*, 411 F.3d

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

17

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

1051, 1059 (9th Cir. 2005)).

The purported "substantial burden" that Cozy Earth identifies is that "CEMA effectively forces businesses to identify and treat Washington addresses differently or eliminate them altogether—an impossible and costly task given that domain registration data rarely reflects a recipient's current location." Mot. 13. But businesses incur these costs only if they send false or misleading emails. As the Washington Supreme Court observed, "the only burden the Act places on spammers is the requirement of truthfulness, a requirement that does not burden commerce at all but actually 'facilitates it by eliminating fraud and deception.'" *Heckel*, 24 P.3d at 411 (quoting Jack L. Goldsmith & Alan O. Sykes, *The Internet and the Dormant Commerce Clause*, 110 Yale L.J. 785, 819 (2001)). It is no substantial burden of interstate commerce to prohibit falsity and deception, conduct that "a legitimate business trying to comply with relevant laws would not be engaging in anyway." S. Rep. No. 108-102, at 22. Because Cozy Earth has failed to establish a substantial burden, its *Pike* challenge fails at the outset. *See Flynt*, 131 F.4th at 933.

Cozy Earth's challenge also fails at the next stage, because it has not shown that the burdens of truthfulness in email subject lines so outweigh the benefits as to make CEMA unreasonable or irrational. "At this stage, and unless the benefits of the state's law are illusory, courts typically accept the state's articulation of the law's claimed benefits." *Id.* at 925. Washington enacted CEMA "to address an increasing number of consumer complaints about commercial electronic mail. The legislature was specifically concerned about the growing volume of commercial e-mails," and "the added cost consumers faced when a barrage of commercial e-mails meant that they paid Internet providers for time spent sifting through in-boxes cluttered by spam." *Brown*, 567 P.3d at 41 (quotations omitted).

In *Heckel*, the Washington Supreme Court provided a detailed explanation of the benefits of CEMA's subject-line provision to both internet service providers (ISPs) and individual internet users. 24 P.3d at 409-10. It benefits ISPs because, to "handle the increased e-mail traffic attributable to deceptive spam, ISPs must invest in more computer equipment." *Id.* at 409. "Operational costs likewise increase as ISPs hire more customer service representatives to field spam complaints and more system administrators to detect accounts being used to send spam." *Id.* at 410. CEMA also benefits

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

18

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

individual internet users because "the use of false or misleading subject lines … hampers an individual's ability to use computer time most efficiently." *Id.* CEMA therefore serves the "'legitimate local purpose' of banning the cost-shifting inherent in the sending of deceptive spam." *Id.*

Cozy Earth makes no argument that these facts could not reasonably be conceived to be true by the Washington legislature. Instead, it argues that CEMA's benefits are "illusory [because] consumers don't need CEMA to protect them from receiving unwanted commercial emails, since CAN-SPAM already provides comprehensive protection." Mot. 12. The District of Maryland rejected this same argument because there are "competing law enforcement concerns" and "only so many actions may be maintained against so many suspected offenders at any one time." *Beyond Sys.*, 422 F. Supp. 2d at 535. So "[g]ranting individual recipients of spam the right to bring individual actions by holding out the possibility of substantial statutory damages for each transgression is a far more effective and efficient way to put the State's anti-spam policy into practice." *Id.* at 535-36. In addition, CEMA provides greater protection than CAN-SPAM because it prohibits all "false or misleading information in the subject line," RCW § 19.190.020(1)(b), not just subject lines that mislead about "the contents or subject matter of the message," 15 U.S.C. ¶ 7704(a)(2). In any event, CAN-SPAM was not around when CEMA was enacted. Congress enacted CAN-SPAM years later, with the express intent to preserve existing statutes, like CEMA, that prohibited falsity or deception in emails. So Cozy Earth has not—and cannot—meet its high burden of showing that the Washington legislature's decision to enact CEMA was "unreasonable or irrational." S.*D. Myers*, 253 F.3d at 471. And that is especially so because the only burden is on businesses that send false or misleading emails. *See Heckel*, 24 P.3d at 411.

**C.      There is no freestanding "extraterritoriality" challenge, and Cozy Earth's attempt at one fails anyway.**

Cozy Earth argues that "CEMA violates the Dormant Commerce Clause because it 'directly controls commerce occurring wholly outside the boundaries of [Washington.]'" Mot. 12 (citing *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989)). Cozy Earth posits a hypothetical of a Washington resident who happens to receive a false or misleading email subject line while traveling out of state. *Id.* It says that the possibility of this scenario renders CEMA "per se invalid." *Id.* (quoting *Valley Bank of Nev. v. Plus*

Plaintiff's Opposition to Defendant's
Motion to Dismiss                                    19
Case No. 2:25-cv-02019-RAJ

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

*Sys., Inc.*, 914 F.2d 1186, 1189–90 (9th Cir. 1990)).  This argument fails for three separate reasons.

First, "the Supreme Court in *Pork Producers* specifically rejected an 'almost *per se* rule forbidding enforcement of state laws that have the practical effect of controlling commerce outside the State, even when those laws do not purposely discriminate against out-of-state economic interests.'" *Flynt*, 131 F.4th at 929 (quoting *Pork Producers*, 598 U.S. at 371).  "And the Court clarified that cases like *Healy*, on which [Cozy Earth] here rel[ies], turned on an impermissible discriminatory purpose against out-of-state economic interests, not any freestanding extraterritoriality principle." *Id.* (citing *Pork Producers*, 598 U.S. at 373-74); *see Pork Producers*, 598 U.S. at 371 (*Healy* "typifies the familiar concern with preventing *purposeful discrimination* against out-of-state economic interests.") (emphasis added).  Thus, both the Supreme Court and the Ninth Circuit have recently rejected the proposition that there is a freestanding "extraterritoriality" principle—much less a per se rule—to the dormant Commerce Clause.  Rather, the dormant Commerce Clause focuses on "purposeful discrimination," which Cozy Earth does not—and cannot—argue here.  *Pork Producers*, 598 U.S. at 371; *see supra* § V.B.

Cozy Earth's extraterritoriality concerns "are appropriately regarded as facets of the *Pike* balancing test," which fails for the reasons explained above.  *Heckel*, 24 P.3d at 411; *see id.* at 411 n.15 ("[E]xtraterritoriality cases[] should be viewed as just another variant of balancing analysis.") (quoting Goldsmith & Sykes, *supra*, at 808).  Any incidental extraterritorial effects because a Washington resident happens to be out of state when they receive an email does not "so outweigh the putative benefits as to make the statute unreasonable or irrational." S.*D. Myers*, 253 F.3d at 471; *see Heckel*, 24 P.3d at 412 ("[T]here is no 'sweeping extraterritorial effect' that would outweigh the local benefits of the Act.") (quoting *Edgar v. Mite Corp.*, 457 U.S. 624, 642 (1982))

Second, as the Washington Supreme Court held in rejecting an identical challenge based on an identical hypothetical, CEMA "does not burden interstate commerce by regulating when or where recipients may open the proscribed … messages." *Heckel*, 24 P.3d at 412.  "Rather, the Act addresses the conduct of spammers in targeting Washington consumers." *Id.*  And it is not unreasonable or irrational for Washington to want to address spammers targeting Washington consumers.  In any event, "the hypothetical mistakenly presumes that the Act must be construed to apply to Washington residents

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

when they are out of state, a construction that creates a jurisdictional question not at issue in this case." *Id.*

Third, Cozy Earth's challenge to CEMA is a facial challenge, which can succeed only if Cozy Earth shows that "the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). That a law "might operate unconstitutionally under some conceivable set of circumstances is insufficient." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Accordingly, when addressing a facial challenge, a court cannot "speculate about hypothetical or imaginary cases." *Wash. State Grange*, 552 U.S. at 450 (quotation omitted). That is exactly what Cozy Earth does. It does not contend that CEMA is unconstitutional as applied to this case. Instead, it relies solely on a hypothetical and imaginary situation. Mot. 12.

Cozy Earth's reliance on *Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320 (9th Cir. 2015) (en banc) is misplaced. To begin, to the extent *Sam Francis* holds that extraterritorial application alone is unconstitutional in the absence of discriminatory purpose, it is inconsistent with *Pork Producers*, and *Pork Producers* controls. *See Pork Producers*, 598 U.S. at 371-76; *Flynt*, 131 F.4th at 931 (questioning "whether *Sam Francis* remains good law after the Supreme Court's decision in *Pork Producers*"). Indeed, *Sam Francis* relied on *Healy*, which the Supreme Court later clarified "turned on an impermissible discriminatory purpose against out-of-state economic interests, not any freestanding extraterritoriality principle." *Flynt*, 131 F.4th at 929 (citing *Pork Producers*, 598 U.S. at 373-74); *see Sam Francis*, 784 F.3d at 1323-25 (relying on *Healy* in holding the statute unconstitutional); *id.* at 1325 ("We merely apply the simple, well established constitutional rule summarized in *Healy*."). There is no discriminatory purpose here, so *Healy* (and cases relying on it) do not apply.

*Sam Francis* is also distinguishable. That case involved an "as applied" challenge to certain transactions at issue in the case, not a facial challenge based on hypothetical and imaginary situations. *Sam Francis*, 784 F.3d at 1323. Moreover, in *Sam Francis*, California had no reason to regulate the transactions at issue (art sales that occurred outside of California by California residents). *Id.* Here, by contrast, Washington has a legitimate interest in regulating "the conduct of spammers … targeting Washington consumers" by sending deceptive emails to Washington email addresses—whether or not

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

21

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

the Washington residents happen to be in Washington when they receive the email. *Heckel*, 24 P.3d at 412.

**VI. Plaintiff adequately alleges his CPA claim.**

"A violation of CEMA's e-mail regulations is a per se violation of the Consumer Protection Act (CPA)." *Brown*, 567 P.3d at 42. So because Plaintiff adequately alleges a CEMA violation, he also states a CPA claim. Cozy Earth's only challenge to Plaintiff's CPA claim is derivative of its challenges to his CEMA claim, and fails for the same reasons. Mot. 13.

**VII. Conclusion.**

The Court should deny Cozy Earth's motion.

Dated: January 23, 2026

Respectfully submitted,

By: /s/ *Jonas B. Jacobson*
Jonas B. Jacobson (WSBA No. 62890)
jonas@dovel.com
Simon Franzini (WSBA No. 63689)
simon@dovel.com
Martin Brenner, *Admitted pro hac vice*
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

22

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066

## Certification of Compliance

I certify that this memorandum contains 8,397 words, in compliance with the Local Civil Rules.

Dated: January 23, 2026                                    _/s/ Jonas B. Jacobson_____

Plaintiff's Opposition to Defendant's
Motion to Dismiss
Case No. 2:25-cv-02019-RAJ

23

Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
(310) 656-7066